IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

ANGELA M. BOETCHER,

    **Plaintiff,**

v.

    Civil Action 2:20-cv-4333
    Judge Edmund A. Sargus, Jr.
    Magistrate Judge Elizabeth P. Deavers

COMMISSIONER OF SOCIAL SECURITY,

    **Defendant.**

### REPORT AND RECOMMENDATION

Plaintiff, Angela M. Boetcher, brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") finding her disability ceased on October 19, 2016 and she no longer qualified for social security disability insurance benefits.  This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 17), the Commissioner's Memorandum in Opposition (ECF No. 20), and the administrative record (ECF No. 14).  For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

    **I.**    **BACKGROUND**

Plaintiff filed an application for benefits in June 2009, alleging disability due to osteomyelitis, arthritis, depression, anxiety, shingles, scoliosis, and degenerative joint disease. (R. at 162-168.)  Plaintiff's application was granted with an onset date of February 6, 2009.  (*See* R. at 19.)  The Commissioner conducted a continuing disability review and determined that

Plaintiff's disability ceased on October 19, 2016, because she was weight bearing and the severity of her degenerative condition did not meet listings 1.03 or 1.04. (R. at 104.) It was also determined that Plaintiff does not have marked limitations in the ability to understand information, interact with others, concentrate, or adapt, and that her mental condition does not meet or equal listings 12.04 or 12.06. (*Id.*)

This determination was upheld upon reconsideration by a state agency Disability Hearing Officer. (R. at 110-11.) Plaintiff sought a *de novo* hearing before an administrative law judge. On March 20, 2019, administrative law judge Thomas L. Wang (the "ALJ") held a hearing at which Plaintiff, unrepresented by counsel, appeared and testified via telephone. (R. at 37-63.) The ALJ issued a decision finding that Plaintiff's disability ended as of October 19, 2016, and that she has not become disabled again since that date. (R. at 16-36.) On July 11, 2019, Plaintiff filed a Request for Review of Hearing Decision Order. (R. at 160-61.) The Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1-6.) This matter is thus properly before this Court for review.

## II. HEARING TESTIMONY

In the March 20, 2019 Decision, the ALJ summarized Plaintiff's hearing testimony as follows:

> [Plaintiff] testified she injured her foot and had 7 surgeries and a bone infection. She testified that her gait was off, and then began having back pain. She has had several injections and therapies, and two back surgeries. She testified that some days she is laying down most the day due to back pain. Some days her foot hurts and she cannot put any pressure on it. Her lumbar laminectomy did not give her improvement. She had a spinal cord stimulator implanted a few weeks prior to the hearing, however she testified she was still adjusting to that. She had good results with the trial, but has not had such results with the implant. She testified she is not able to lift and cannot sit for long periods. She has difficulty sleeping. She has difficulty bending over at the waist. She has to have help with bathing and showering.

2

> At the hearing [Plaintiff] testified that while she had significant relief with the stimulator trial, she was still undergoing adjustments with her permanent implant.

(R. at 24, 27.)

### III. RELEVANT MEDICAL RECORDS

In the March 20, 2019 Decision, the ALJ summarized the relevant medical records as follows:

> The medical evidence supports a finding that, by October 19, 2016, there had been a decrease in medical severity of the impairment present at the time of the CPD.[1] At the time of the CPD [Plaintiff] had undergone several surgeries on the right foot, including one in the past year. However, she continued to exhibit tenderness and deformity, with chronic pain over the instep. [Plaintiff] was noted to not be fully weight bearing and decreased range of motion of her right ankle.
>
> However, evidence since [Plaintiff's] CPD, documents medical improvement. Treatment records in 2015 note [Plaintiff] returned to working out. A[s] of February 2016 her foot pain was noted to be stable on her medication regimen. At [Plaintiff's] August 24, 2016 she was noted to be able to walk independently. Her gait pattern was slow. She was full weight bearing but cautious with weight bearing on her left foot. [Plaintiff] exhibited no motor weakness and no sensory loss. She reported she was not receiving any treatment for her foot other than narcotic analgesics. Her foot exhibited no gross deformities, and she had full range of motion of the ankle, with some stiffness with wiggling her toes and range of motion of the foot itself. [Plaintiff] reported she was independent with dressing, grooming, feeding, bathing, cooking, cleaning, shipping, doing laundry and driving. Accordingly, medical improvement has occurred with regard to [Plaintiff's] right foot impairment.
>
> *** [Plaintiff's] treatment records as of October 19, 2016 document her to be full weight bearing, without any indication of the need for an assistive device. She further has not required any additional foot surgeries since the CPD. Subsequent treatment records continue to note ambulation without the use of an assistive device.
>
> *** In terms of [Plaintiff's] foot impairment, [Plaintiff] has received limited treatment since October 19, 2016, and objective findings remain limited. The

---

[1] The ALJ noted that the most recent favorable medical decision finding that Plaintiff continued to be disabled was a determination dated January 25, 2013, which is referred to as the Comparison Point Decision ("CPD"). (R. at 21.)

majority of [Plaintiff's] treatment records since that time relate to [Plaintiff's] complaints of back pain as opposed to foot pain. However, treatment records throughout 2017 do note [Plaintiff] continued to take Percocet for her foot pain. The records lack consistent complaints of foot problems or limitations, however.

At a more recent March 2018 neurosurgery visit, [Plaintiff] reported some discomfort over the right foot area where she previously had surgery, but reported this was not disabling for her. As of December 2017[,] [Plaintiff] reported she was able to walk several miles each day for exercise. The Record lacks subsequent significant treatment for foot pain. [Plaintiff's] treatment records further lack any subsequent imaging, surgical intervention, or other treatment other than pain medication for [Plaintiff's] right foot impairment.

[Plaintiff's] treatment records document that since October 19, 2016, [Plaintiff] has been diagnosed with a lumbar spine impairment. However, the objective medical evidence does not suggest limitations greater than those assessed in the residual functional capacity above, limiting [Plaintiff] to a reduced range of sedentary work. [Plaintiff] presented in December 2016 with a complaint of back pain worsening over the past two weeks. Upon examination range of motion was limited inflexion and extension secondary to pain. However, lower extremity strength was full, sensation was intact, and straight leg raise testing was negative. An x-ray revealed multilevel degenerative disc disease. However, physical examination findings remained limited. Upon presentation to pain management for treatment, [Plaintiff] exhibited full range of motion, 5/5 strength of the extremities, and negative straight leg raise testing. She underwent radio frequency ablation on the right L4-L5, L5-S1 on February 6, 2017, and reported 95% improvement in her pain, lasting 2 weeks. She did not return for treatment again until August 25, 2017. She reported her pain had not improved. She exhibits some decreased range of motion of the lumbar spine and tenderness over the sacroiliac joint. However, she exhibited normal strength and no sensory deficits. She subsequently underwent a sacroiliac joint injection with no reported improvement.

[Plaintiff] underwent an MRI of the lumbar spine in September 2017 which revealed disc bulging at L3-L4 and L4-L5 with bilateral exiting spinal nerve effacement at these levels, and otherwise no acute abnormalities of the lumbar spine. She reported no benefit with an epidural steroid injection. However, she continued to deny motor or sensory changes. In December 2017 [Plaintiff] was referred for a neurosurgery consultation. She reported right sided low back pain. However, she reported she was able to walk several miles a day for exercise. Upon examination, [Plaintiff] ambulated with an antalgic gait, with no assistive device. She exhibited 4/5 strength in the right tibialis and right quadriceps, but otherwise 5/5 strength, and decreased sensation along the right lateral thigh and calf, but otherwise intact sensation. Straight leg raise testing remained negative. She was assessed with LS radiculopathy. [Plaintiff] underwent a laminectomy

4

foraminotomy, and decompression of the L3-L4 and L4-L5 nerve roots on the right side in February 2018. Follow up examinations revealed significant resolution of [Plaintiff's] right leg pain symptoms, and [Plaintiff] reported she was able to increase her activity and work around the house, with some outdoor activity. As of May 2018[,] she exhibited negative straight leg raise testing, intact strength and stable gait. [Plaintiff] did, however, develop some sacroiliac pain. She reported significant improvement in this pain with a sacroiliac injection. [Plaintiff] was ultimately recommended a spinal cord stimulator for her bilateral gluteal pain symptoms. She reported and 80 percent reduction in her pain symptoms with the spinal cord stimulator trial. She reported she was able to perform her daily activities and attend her son's swim meet. She denied radicular pain symptoms. Most recently [Plaintiff] underwent implantation of a spinal cord stimulator in January 2019.

While [Plaintiff] has a history of a right foot impairment with multiple surgeries, her treatment since October 19, 2016 has been very limited with limited objective findings, and no additional invasive treatment or surgical intervention. [Plaintiff] was also subsequently diagnosed with a significant lumbar spine impairment. However, her physical examinations remained limited, generally noting full strength, and consistently noting negative straight leg raise testing. [Plaintiff] reported walking several miles a day for exercise, even before undergoing a laminectomy and decompression, after which she reported significant improvement of her right extremity radicular symptoms. While [Plaintiff] subsequently reported gluteal pain and was assessed with sacroiliitis, she continued to deny any radicular pain symptoms.

(R. at 23-27 (internal citations omitted).)

### IV.     ADMINISTRATIVE DECISION

On May 21, 2019, the ALJ issued his decision. (R. at 16-36.) The ALJ noted that at the time of the CPD, Plaintiff had the following medically determinable impairment: status post fracture of the right foot with fusion. This impairment was found to meet section 1.03 of 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d)). (*Id.*) At step one of the sequential evaluation process,[2] the ALJ found that Plaintiff has not engaged in substantially gainful activity.

---

[2] Social Security Regulations require ALJs to determine whether a claimant continues to be disabled through an eight-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1594. Although the ALJ's review may cease at any point if there is sufficient evidence that the claimant is still unable to engage in substantial gainful activity, the complete sequential review

5

(*Id.*)  The ALJ found that the medical evidence establishes that, since October 19, 2016, Plaintiff has had the following medically determinable impairments: status post right foot fracture and fusion, degenerative disc disease, post laminectomy syndrome and sacroilliitis, arthritis, obesity, attention deficit hyperactivity disorder, gastroesophageal reflux disease, depressive disorder, anxiety disorder, and mild tendinosis of the left knee.  These are Plaintiff's current impairments.  (*Id.*)  At Step Two, the ALJ found that since October 19, 2016, Plaintiff has not had an

---

poses eight questions:

1. Is the claimant engaging in substantial gainful activity? If so, disability has ended.
2. Do the claimant's impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the "Listings"), 20 C.F.R. Subpart P, Appendix 1? If so, disability continues.
3. Has there been medical improvement? If not, proceed to Step Five.
4. If there has been medical improvement, is it related to the claimant's ability to work? If not, proceed to Step Five. If so, proceed to Step Six.
5. Does an exception to medical improvement apply? If there has been no medical improvement at Step Three or if it is not related to the claimant's ability to work at Step Four, and no exception applies, disability continues.
6. Are all of the claimant's current impairments in combination severe? If not, disability has ended.
7. If the impairment(s) is severe, considering the claimant's RFC, can he or she perform his or her past relevant work? If so, disability has ended.
8. Assuming the claimant can no longer perform his or her past relevant work—and also considering the claimant's age, education, past work experience, and RFC—do significant numbers of other jobs exist in the national economy which the claimant can perform? If so, disability has ended. If not, disability continues.

*Harraway v. Comm'r of Soc. Sec.*, No. 3:16-CV-110, 2017 WL 3327032, at *3 (S.D. Ohio Aug. 4, 2017), *report and recommendation adopted*, No. 3:16-CV-110, 2017 WL 3588900 (S.D. Ohio Aug. 21, 2017).  There is no presumption of continuing disability.  *Id.* (citing *Kennedy v. Astrue*, 247 F.Appx. 761, 764.)  However, the "ultimate burden of proof lies with the Commissioner in termination proceedings." *Id.*

impairment or combination of impairments which met or medically equaled the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526). (*Id.*)  For Steps Three and Four, the ALJ found that medical improvement occurred on October 19, 2016, and that the medical improvement is related to the ability to work because by October 19, 2016, Plaintiff's CPD impairment no longer met or medically equaled the same listings that was met at the time of the CPD.  (R. at 23-24.)  The ALJ continued to find that since October 19, 2016, Plaintiff has continued to have a severe impairment or combination of impairments (20 CFR 404.1594(1)(6)).  (*Id.*)  The ALJ then set forth Plaintiff's residual functional capacity ("RFC") as follows:

> Based on the impairments present since October 19, 2016, [Plaintiff] has had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except [Plaintiff] could frequently operate foot controls with the right; stand and walk only 30 minutes at a time; never climb ladders, ropes or scaffolds; occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl; and tolerate no exposure to unprotected heights.

(R. at 25.)  The ALJ also found that since October 19, 2016, Plaintiff has been unable to perform past relevant work, but relying on the VE's testimony, the ALJ found that since October 19, 2016, considering her age, education, work experience, and RFC, the ALJ determined that there are jobs that exist in significant numbers in the national economy that the Plaintiff can perform, such as charge account clerk, bench assembler, or weight tester.  (R. at 29-30.)  The ALJ therefore concluded that Plaintiff's disability ended on October 19, 2016, and Plaintiff has not become disabled again since that date.  (R. at 30.)

## V. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI.   ANALYSIS

In her Statement of Errors, Plaintiff contends that the ALJ erroneously discredited the opinions of Robert Thompson, M.D., the consultative examiner who opined that Plaintiff was unable to ambulate effectively. (ECF No. 17 at PAGEID ## 876-880.). Specifically, Plaintiff argues that "Dr. Thompson's opinion that [Plaintiff] cannot walk on uneven surfaces, according to Social Security [guidelines], is evidence of an inability to ambulate effectively," so "Dr. Thompson . . . believes that [Plaintiff] is unable to ambulate effectively." (*Id.* at PAGEID ## 877-878.) Plaintiff stresses Dr. Thompson's status as "Social Security's own examining expert" and argues that "Dr. Thompson's credentials and ability to personally examine [Plaintiff] put him in a better position than any other opining source of record to provide an accurate illustration of [Plaintiff's] functional abilities." (*Id.* at PAGEID # 878.) Regarding the ALJ's decision, Plaintiff acknowledges that the ALJ addressed Dr. Thompson's opinion, but argues that "the ALJ's reasoning for discrediting the opinion was not supported by substantial evidence" because "the ALJ did not consider whether Dr. Thompson supported his opinions." (*Id.* at PAGEID ## 878-879.) Plaintiff argues that "[t]he ALJ did not mention any specific findings from Dr. Thompson's report" and "[t]he ALJ did not claim that [Dr Thompson's] findings were consistent with his opinions or whether they were inconsistent," concluding that the ALJ "failed to properly consider one of the two mandatory factors for evaluating medical opinions." (*Id.* at PAGEID # 879.) Plaintiff believes that "Dr. Thompson did provide clinical objective findings that supported his opinions regarding [Plaintiff's] limited ability to ambulate," and argues that the ALJ's "failure to follow agency rules and regulations led to an improper dismissal of Dr. Thompson's opinions and therefore an improper decision that [Plaintiff's] medical condition no longer meets Listing § 1.03." (*Id.* at PAGEID ## 879-880.)

9

In response, the Commissioner counters that "[i]n finding that Plaintiff's impairment no longer met Listing 1.03, the ALJ also properly explained why he did not agree with a ban on walking on rough or uneven surfaces opined by . . . Dr. Thompson." (ECF No. 20 at PAGEID # 886.).  The Commissioner argues that Dr. Thompson's restriction "exactly parroted Plaintiff's own subjective complaints and appears to be incompatible with her reports to another physician of record that she was able to walk several miles per day for exercise," and that because "Dr. Thompson did not explain how his mostly unremarkable exam findings . . . supported such an extreme restriction, [] the ALJ properly excluded it from Plaintiff's RFC." (*Id.* at PAGEID # 887.)  The Commissioner also highlights that "the ALJ reasonably relied on the prior administrative finding of . . . Lynn[e] Torello, M.D.," and highlights that the ALJ "offered even greater limitations that [Dr. Torello] opined." (*Id.* at PAGEID # 890.)

The Commissioner generally characterizes Plaintiff's argument as "a disagreement with how the ALJ decided to weigh differing medical opinions," which is not a basis for reversal, and argues that "[t]he ALJ reasonably considered that the record evidence supported that Plaintiff had many physical limitations, but that the extreme limitations pertaining to walking on uneven surfaces opined by Dr. Thompson were unsupported by explanation or his clinical observations, and were inconsistent with the record as a whole." (*Id.* at PAGEID # 891.)  The Commissioner also cites several instances in which the ALJ "specifically noted that Plaintiff was not consistently complaining of foot problems or limitations, which undermined Dr. Thompson's assessment," and argues that the ALJ was could reasonably infer that if Plaintiff were able to walk several miles each day for exercise, as she told Ying Chen, D.O. in December 2017, that "some of the areas she may be walking were not completely even or smooth which would undermine Dr. Thompson's restriction regarding her inability to ambulate on uneven or rough

10

surfaces at all." (*Id.* at PAGEID ## 893-894.) The Commissioner also argues that Dr. Thompson's opinion pertaining to Plaintiff's inability to walk on uneven surfaces "was unsupported by his own examination notes," while the ALJ's RFC was supported by substantial evidence throughout the record. (*See id.* at PAGEID ## 895-905.) Plaintiff did not file a Reply brief. Accordingly, the matter is ripe for judicial review.

The issue before the Court is whether the ALJ erred in assessing that Plaintiff no longer met Listing 1.03 as of October 19, 2016. (*See* ECF No. 17.) To satisfy Listing 1.03, Plaintiff must have an impairment as follows:

> 1.03 *Reconstructive surgery or surgical arthrodesis of a major weight-bearing joint*, with inability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.03. The regulations define a claimant's ability to "ambulate effectively" as follows:

> Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; *i.e.*, an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.

20 CFR § Pt. 404, Subpt. P, App. 1 § 1.00B(2)(b)(1). The regulations further provide:

> To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, **examples of ineffective ambulation include, but are not limited to**, the inability to walk without the use of a walker, two crutches or two canes, **the inability to walk a block at a reasonable pace on rough or uneven surfaces**, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's

11

> home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 CFR § Pt. 404, Subpt. P, App. 1 § 1.00B(2)(b)(2) (emphasis added). Additionally, the record evidence must show that Plaintiff's impairment "has lasted or can be expected to last for a continuous period of 12 months." 20 C.F.R. § 404.1525(c)(4).

A decision that a claimant meets a listed impairment "must be based solely on medical evidence supported by acceptable clinical and diagnostic techniques." *Land v. Sec'y of H.H.S.*, 814 F.2d 241, 245 (6th Cir. 1986). In determining whether a claimant satisfies the requirements of a listing, the ALJ must "actually evaluate the evidence, compare it to Section [1.03] of the Listing, and give an explained conclusion, in order to facilitate meaningful judicial review. Without it, it is impossible to say that the ALJ's decision . . . was supported by substantial evidence." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 415–16 (6th Cir. 2011) (citations omitted).

Here, the ALJ found that Plaintiff no longer met Listing 1.03 as of October 19, 2016, because "the evidence does not indicate [that Plaintiff] requires a hand-held assistive device(s) that limits the functioning of both upper extremities in order to ambulate." (R. at 21 (internal citation omitted).) The ALJ continued:

> [Plaintiff's] treatment records as of October 19, 2016 document her to be full weight bearing, without any indication of the need for an assistive device. She further has not required any additional foot surgeries since the CPD. Subsequent treatment records continue to note ambulation without the use of an assistive device.
>
> Accordingly, [Plaintiff] no longer meets or medically equals the same listing met at the time of the CPD. In so finding, the undersigned finds the opinion of the medical consultant [Lynne Torello, M.D.] persuasive. Her opinions as to [Plaintiff's] medical improvement are well supported by the objective findings, namely [Plaintiff's] ability to ambulate independently.

(R. at 24.) The ALJ's analysis and conclusion is therefore at odds with the opinion of consultative examiner Robert J. Thompson, M.D., who noted on August 24, 2016 that Plaintiff would be "unable to do any work that required her to walk or stand for more than 30 minutes at a time without resting and that she "is unable to walk on uneven surfaces." (R. at 596.) Accordingly, Dr. Thompson – unlike the ALJ – found that Plaintiff was not able to "ambulate effectively," as it relates to Listing 1.03. (*Id.*) The ALJ recognized this disagreement, however, and expressly found that Dr. Thompson's opinion as to Plaintiff's inability to walk on uneven surfaces was "inconsistent with [Plaintiff's] lack of recent treatment for her foot, as well as her own reports that she was walking several miles a day for exercise." (R. at 28 (citing 681, 785-791).) As the ALJ noted, Plaintiff reported walking several miles a day for exercise "even before undergoing a laminectomy and decompression, after which she reported significant improvement." (R. at 27 (citing R. at 789, 805-814).)

Plaintiff now argues that "the ALJ erroneously discredited the opinions of Dr. Thompson" and that "the ALJ's reasoning for discrediting the opinion was not supported by substantial evidence." (ECF No. 17 at PAGEID ## 876-880.) The Undersigned disagrees. At the outset, the Undersigned emphasizes that the relevant question is not whether the ALJ could have adopted Dr. Thompson's opinion, but rather whether the ALJ's actual conclusion was supported by substantial evidence. *Nash v. Comm'r of Soc. Sec.*, No. 19-6321, 2020 WL 6882255, at *4 (6th Cir. Aug. 10, 2020) ("Even if the record could support an opposite conclusion, we defer to the ALJ's finding because it is supported by substantial evidence, based on the record as a whole.") (internal citations omitted). Here, because the Court finds that the ALJ's finding was supported by substantial evidence, the Undersigned defers to the ALJ's decision.

13

A closer examination of the ALJ's decision shows that the ALJ cited the following evidence from the record in determining that Plaintiff no longer met Listing 1.03:

- **R. at 406-592, 594-600, 607-656:** Multiple treatment records through October 19, 2016, which document Plaintiff to be full weight bearing, without any indication of the need for an assistive device.

- **R. at 679:** Dr. Torello's January 3, 2017 Case Analysis, which notes that Plaintiff "is able to ambulate independently" and that the "[f]indings do not support the presence of ineffective ambulation" in concluding that Plaintiff's condition "no longer meets listing 1.03."

- **R. at 680-681:** A January 10, 2017 progress note which reports that Plaintiff only treated with physical therapy "many years ago," that she only went to a chiropractor "once," and that "[s]he continues to do her home exercise program and she is active lady special walking [sic]."

- **R. at 789:** A December 13, 2017 letter from Ying Chen, D.O., which reports Plaintiff as stating that "[s]he walks several miles each day for exercise."

- **R. at 794-804, 805-814:** Multiple treatment records, post-dating October 19, 2016, which document Plaintiff's ambulation without the use of an assistive device.

(*See* R. at 24, 28.)  In light of this extensive record evidence, Plaintiff is mistaken to suggest that "the ALJ's reasoning for discrediting [Dr. Thompson's] opinion was not supported by substantial evidence."  (ECF No. 17 at PAGEID # 878.)

Instead of trying to demonstrate how the ALJ's conclusion was not supported by substantial evidence, Plaintiff argues that the ALJ's committed reversible error by failing to address the supportability and consistency of Dr. Thompson's opinion.  (ECF No. 17 at PAGEID ## 879-880.)  This argument also falls flat.  While Plaintiff is correct that under the governing

14

regulations,[3] ALJs are required to consider the supportability[4] and the consistency[5] of every medical opinion, the ALJ appropriately did so in this case. For example, while the ALJ expressly found that "[t]he records lack consistent complaints of foot problems or limitations," and that Dr. Thompson's opinion was "inconsistent with [Plaintiff's] lack of recent treatment for her foot, as well as her own reports that she was walking several miles a day for exercise," the ALJ nevertheless considered Dr. Thompson's opinion to be "partially persuasive" because "[h]is opinions are generally consistent with [Plaintiff's] medical improvement of her right foot impairment." (R. at 28.) To be clear, "[t]here is no regulatory requirement that an ALJ adopt every facet of a particular medical opinion in formulating an RFC, so long as the record as a whole supports the RFC actually determined by the ALJ, and she adequately explains her analysis in a manner sufficient to allow review." *Kincaid v. Comm'r of Soc. Sec.*, No. 1:16-CV-736, 2017 WL 9515966, at *3 (S.D. Ohio June 12, 2017), *report and recommendation adopted*, No. 1:16CV736, 2017 WL 4334194 (S.D. Ohio Sept. 30, 2017). Here, the only aspect of Dr. Thompson's opinion that the ALJ discounted was regarding Plaintiff's ability to walk on uneven surfaces. But, as discussed above, the ALJ supported this decision with substantial evidence throughout the record, and adequately explained his decision.

---

[3] The parties do not dispute that Plaintiff's claim is governed by revised regulations redefining how evidence is categorized and evaluated when an RFC is assessed. *See* 20 C.F.R. §§ 404.1513(a), 404.1520c, 416.913(a), 416.920c (2017).

[4] "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1) (2017).

[5] "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2) (2017).

For these reasons, the Undersigned agrees with the Commissioner that Plaintiff's argument amounts to nothing more than "a disagreement with how the ALJ decided to weigh differing medical opinions." (ECF No. 20 at PAGEID # 891.) This clearly is not a basis for setting aside the ALJ's factual findings, however, and because the ALJ's decision is supported by substantial evidence the Court is obligated to let it stand. *Kincaid*, 2017 WL 9515966, at *3 ("A disagreement with how the ALJ decided to weigh differing medical opinions 'is clearly not a basis for . . . setting aside the ALJ's factual findings.'" (quoting *Mullins v. Sec'y of HHS*, 836 F.2d 980, 984 (6th Cir. 1987)).

## VII. CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED.**

## VIII. PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district

court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

**Date: November 19, 2021**    /s/ *Elizabeth A. Preston Deavers*
                               **ELIZABETH A. PRESTON DEAVERS**
                               **UNITED STATES MAGISTRATE JUDGE**